[Civ. No. 13547. First Dist., Div. One. Mar. 24, 1948.]

RUTH KROMM, Respondent, v. FRED KROMM, Appellant.

E. C. Mahoney for Appellant.

Irene A. Gies and Eli D. Langert for Respondent.

BRAY, J.—This appeal involves the question of whether the trial court abused its discretion in refusing to open up a default, and the question of whether, where two actions involving the same parties and subject matter are filed in the same county, the court has power to proceed in the action secondly filed.

On April 15, 1946, Fred Kromm filed a divorce action against his wife, Ruth Kromm, in San Mateo County. This action, numbered 40681, will be hereafter referred to as the first action. Two days later, Ruth, plaintiff herein, who had

not yet been served with summons in the first action, filed in the same county an action for divorce against Fred, defendant herein. This action, numbered 40686, will be referred to herein as the second action. Summons and an order to show cause for attorney's fees and support were served on defendant in the second action. This order to show cause was heard April 26, on which day the wife was served with summons in the first action. She did not appear therein, and her default was entered on May 9. On May 15, defendant answered in the second action, denying generally the material allegations of the complaint and setting up, by way of plea in abatement, the pendency of the first action. On August 1, a default interlocutory decree of divorce was entered in the first action in favor of the husband. This decree was set aside on September 26 on motion of the wife, upon condition that within five days she file in this first action an answer and cross-complaint. This she did. No further proceedings were had in the first action. On November 1, a withdrawal as attorney in both cases was filed by the husband's attorney, Mahoney. On November 15, a notice that the second action was set for trial on November 22 was served on the husband. On November 22, the trial of the second action was continued to January 3. On January 3, the action was tried (no appearance being made by defendant), and an interlocutory decree of divorce was granted and entered in favor of plaintiff. On April 3, defendant moved to set aside the default and decree. The motion was made on the grounds (1) that defendant was prevented from having a fair trial, as he was not represented by counsel and was in the military service of the United States, and confined by severe illness in a military hospital in the state of Washington; (2) that defendant was misinformed as to the date of trial; (3) that the court knew that defendant was in the military service and failed to appoint an attorney to represent him.

 The only evidence for defendant produced at the hearing was the affidavit of Mahoney, the attorney who had theretofore withdrawn from the case and who appeared as attorney for defendant for the purpose of the motion. The affidavit stated that he had been employed by the husband in April to bring a suit for divorce against the wife. It then set forth the proceedings in the two actions up to the time of the obtaining of the interlocutory decree by the wife in the second action, and that about August 1, defendant, who is an officer in the U. S. Army, had been ordered to duty in the

Pacific Theater, and reported to Fort Lawton, Seattle, Washington; that about the time of his arrival there he had been stricken with a heart attack and ever since has been confined to an army hospital there; that "because said Fred Kromm's absence from the State of California was apt to be prolonged" affiant in the month of October withdrew as his attorney of record; that "disregarding the fact that department 2 of this court had assumed full jurisdiction of this divorce action" plaintiff on November 15, mailed a notice to defendant that the action would be tried in department 1 of the court, and that on November 29, she notified him that the trial had been continued to January 3, 1947; that about December 15, defendant phoned affiant from Seattle stating that he had received the latter notice of trial and employed affiant to appear for him on January 3, and urge the plea in abatement; that on December 27, affiant talked to the clerk of the court, stating that he "was intending to appear" for defendant in the second action and that he had heard it rumored that the matter might not go ahead on the date set; that affiant wanted to be sure about it as he was planning a short vacation in southern California and did not want to rush back unless it was necessary; that the clerk advised him the calendar was crowded for that date and she would continue the matter to January 8, and notify plaintiff's attorney that the continuance was necessary for the convenience of the court; that on January 8, affiant appeared at the courthouse and learned that the matter had been heard on the 3d.

This affidavit constituted the only showing by defendant on the motion. Plaintiff filed an affidavit in which, among other things, she called attention to the fact that no notice of the reassociation as attorney for defendant of Mr. Mahoney had ever been given her or her attorney prior to the motion to set aside the default, and then alleged on information and belief that defendant had not been confined constantly in the hospital but that on December 27 he was able to, and did, travel to and spend some time in Spokane, Washington, and that he made another such visit in March, 1947; that on January 2, the clerk of the court advised plaintiff's attorney that the calendar for January 3 was crowded but advised the attorney to be present at the time set for hearing this matter. The court denied the motion to set aside the default and the decree.

Defendant claims to be entitled to relief under section 473 of the Code of Civil Procedure and under the Soldiers' and Sailors' Civil Relief Act of 1940. ■ Even though it is the

policy of the law to encourage the trial of litigated matters upon the merits, applications under section 473 are addressed to the sound legal discretion of the court and its action can be disturbed by an appellate court only if there is a clear case of abuse of discretion. (*McMahon* v. *McMahon*, 70 Cal.App.2d 126 [160 P.2d 892].) ■ There was no abuse of discretion here. On November 1, Mahoney withdrew as attorney of record for defendant. At the time of obtaining the interlocutory decree of divorce neither plaintiff nor her attorney had any knowledge that Mahoney was intending to come into the case. Moreover, defendant about Christmas time sent plaintiff a Christmas card on which he wrote, in part, the following: "Thanks for having the trial postponed until Jan. 3rd 1947. You could have insisted on going ahead with it on Nov. 22nd-46. Why did you do it. Of course I don't ever expect you to answer that question." Assuming that the court clerk informed Mahoney that she would continue the case from January 3 to January 8, we cannot say as a matter of law that under all the circumstances, including the fact that Mahoney failed to notify plaintiff's attorney that he was coming back into the case, defendant's actions justified a setting aside of the default.

■ As applications for continuance (if the attorney's actions in stating to the court clerk that he was going to be away and did not want to have to hurry back can be considered as such) must be addressed to the discretion of the court, the clerk has no right to continue the matter and inform the other attorney that the continuance is for the convenience of the court. It was held in *Thompson* v. *Crescent Mill & Elevator Co.*, 47 Colo. 4 [105 P. 880], that an attorney is not performing his duty if he merely relies upon the statement of the clerk that his case "may not be reached" without waiting in the courtroom to see whether it is reached. ■ Again, a clerk has no right, in any event, to continue a case for an attorney who is not of record, merely because he says he is "intending to appear." In *Lynch* v. *de Boom*, 26 Cal.App. 311 [146 P. 908], relied upon by defendant, the plaintiff, who was himself an attorney, appeared at the court and called the clerk's attention to the fact that his case set for that day was not on the calendar. The clerk informed him that it would be placed on the calendar for another day. The plaintiff was in the courtroom until 10 minutes after 10, and his case was not called. Moreover, his attorney filed an affidavit tending to show a tentative agreement with counsel that the cause

would not be tried. In *Bodin* v. *Webb,* 17 Cal.App.2d 422 [62 P.2d 155], opposing counsel had discussed the impossibility of defendant's attorneys being present on the day set. Moreover, the secretary of the court, who had charge of arranging the status of cases for trial and notifying attorneys concerning the probable dates upon which cases would go to trial, had assured counsel for defendants that owing to the congested state of the calendar their case would not go to trial on the day set. In both these cases opposing counsel knew that the other counsel would not be present in court and expected their cases not to be tried that day, and, in both cases, applications for relief from default were made within a very few days of the default. Manifestly, these cases involve facts differing materially from those in the case at bar. As said in 164 American Law Reports 552, in cases of misinformation given by the court clerk " . . . each case depends upon its own particular or peculiar circumstances." Again, there is no explanation of the delay in applying for relief. Defendant's attorney learned on January 8 of the action taken. Eighty-five days elapsed before the motion to set aside the default was taken. No explanation is made of this delay. In *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523 [190 P.2d 593], the Supreme Court held that an unexplained delay of 90 days was fatal to an application for relief from a default under section 473.

At argument, defendant contended that on the filing of the first action the court assumed jurisdiction to the complete exclusion of the second action, and also, that as the first action had been assigned to department 2, no other department could proceed with the second action. Both of these contentions were made and answered in *Brown* v. *Campbell,* 110 Cal. 644, 648 [43 P. 12] : "The rule invoked by the appellants, that the judgment of that court which first acquires jurisdiction of the subject matter of a cause of action and of the parties thereto will prevail over the judgment of another court whose jurisdiction was subsequently acquired, has no application to the present case. That rule rests upon comity and the necessity of avoiding a conflict in the execution of judgments rendered by independent courts, either of distinct or concurrent jurisdiction. But the rule itself, as well as the reason for its exercise, has no existence in a case where the actions are brought in the same court, and the judgments are rendered by the same tribunal. There is but one superior court in the city and county of San Francisco, and all of the actions

brought in that court are within the same jurisdiction. . . . The jurisdiction over a cause, after it has been assigned by the presiding judge to one of the other judges for trial, remains in the same court, and neither the judge to whom it has been assigned, nor the department over which he presides, has any jurisdiction over the cause distinct from that of the court in which the action is pending. The entire procedure from the commencement of the action to the execution of the judgment is in one court, and there is no opportunity for conflict of jurisdiction, either in pronouncing a judgment or in its execution after it has been rendered. When, therefore, a suit is commenced in that court upon a cause of action which is then pending before it in another suit, or which has already been carried into judgment, the procedure to be observed is the same as if the two actions were in a court with but a single judge before whom all causes therein were to be tried. If the defense of a pending suit, or the estoppel of a former judgment, is not pleaded when such defense is available to the defendant, he cannot, after an adverse judgment, avail himself of this defense which he neglected to plead when he had an opportunity to do so, any more than he could avail himself of any other defense which he had omitted to plead.'' (See also *Garris* v. *Mitchell,* 7 Cal.App.2d 430, 436 [46 P.2d 225] ; *People* v. *Martino,* 113 Cal.App. 661 [299 P. 86] ; *Davis* v. *Conant,* 10 Cal.App.2d 73, 75 [51 P.2d 151].)

The attorney was employed only to open up the case to present the plea in abatement, and not to contest the case on its merits. The courts do not look with favor on purely dilatory pleas, and the limitation of the attorney's authority in this respect undoubtedly was considered by the court in connection with all the other circumstances. The attorney merely appears ''for the purposes of this motion.'' The fact of a prior action pending is not an absolute bar to the court proceeding with the second action. Not being an absolute bar, it was within the discretion of the court to refuse to open up the case to permit its being pressed.

As said in *Elms* v. *Elms.* 72 Cal.App.2d 508, 513 [164 P.2d 936] : ''While it is the judicial policy liberally to construe section 473 to the end that trials on the merits may be had, we find nothing in defendant's affidavit to warrant an order vacating the annulment decree. To do so would be to grant a new trial at the capricious demand of a defendant who was either grossly negligent or had changed his mind after the judgment. One may not be relieved from his default unless

he makes a showing that he has acted in good faith and demonstrates that his excusable neglect was the actual cause of his failure to attend the trial. Neither one's change of mind nor his inexcusable negligence is ground for vacating a judgment. To warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances.''

*Effect of Soldiers' and Sailors' Civil Relief Act of 1940*

■ Defendant makes no attempt to show that his being in the service prevented him from being represented in the case or from being present at the trial. The attorney's affidavit states that defendant has been confined in an army hospital (a matter which is completely hearsay as to the attorney (See *Scott* v. *Crosthwaite,* 69 Cal.App.2d 663 [159 P.2d 660])); it does not claim that he could not have left there long enough to come to the trial. Plaintiff's affidavit stated that he spent some time after December 27 away from the hospital and at Spokane, Washington. This court held in *Wilterdink* v. *Wilterdink,* 81 Cal.App.2d 526 [184 P.2d 527], that a judgment rendered without the court appointing an attorney under the provisions of the above act is not void and may be set aside only upon a showing, as required by the act, that the defendant was prejudiced in making his defense by reason of his military service. (See also *Allen* v. *Allen,* 30 Cal.2d 433 [182 P.2d 551].) The affidavit here falls far short of this requirement. It is significant that even though in the military service defendant had an attorney of record until November 1. Then his attorney withdrew, undoubtedly with defendant's consent. Late in December defendant thanked plaintiff for postponing the trial to January 3, and indicated his surprise that she had not gone on with the trial in November, implying that he was not going to contest the case, even though, according to his attorney, on December 15, he had employed the attorney to present the plea in abatement; and nowhere does it appear that if he had desired to be present, defendant could not have done so.

We are overlooking the fact that defendant did not comply with rule 15 of the Rules on Appeal, requiring that ''Each point in a brief shall appear separately under an appropriate heading . . .'' (See *Estate of Hartson,* 218 Cal. 536 [24 P.2d 171].)

The order appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.