# STATE v. MARKHAM

No. 6249.   Decided April 24, 1941.   (112 P. 2d 496.)

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder* and *Zar E. Hayes*, Asst. Atty. Gen., for respondent.

*Sam Bernstein, Alke T. Diamant*, and *Joseph C. Fratto*, all of Salt Lake City, for appellant.

LARSON, Justice.

The defendant was charged with murder in the first degree, and the jury returned a verdict of guilty of murder in the first degree with recommendation of life imprisonment. The trial court disregarded the recommendation and sentenced the defendant to death.

The evidence is not disputed. The defendant worked part time as a porter and boot-black in the lobby of an office building in Salt Lake City in which the deceased, Mr. Smith, owned and operated a magazine, candy, and cigar stand. On the day of the murder, November 25, 1939, the defendant was seen leaving the lobby of this particular building at about 6 p. m. The defendant, who was thoroughly familiar with the victim's habits, knew that at about 8 o'clock Mr. Smith would close his stand, put the receipts for the day in a money bag, place the bag in his lunch box and return to his home, walking east on South Temple Street until he reached J. Street, where he would turn north on J. Street. According to his statements and written confession, the defendant went home, had his dinner, found a piece of iron pipe in the rear of his home, and went to "wait" for Mr. Smith on J. Street just north of South Temple Street. When the deceased appeared, at about 9 or 9:30 p. m., the defendant stepped out from behind a tree, grabbed the handle of the lunch box, and upon Mr. Smith's failing to release his grip on it, hit him three or four times over the head with the iron pipe. Defendant took the lunch box, and ran to an empty lot where he pocketed the money, about twenty dollars, and disposed of the lunch box. He was apprehended and confessed the crime. The victim was found by passing motorists and taken to the

hospital where he died three days later. According to the doctor who attended him, the cause of the death was cerebral hemorrhage and pressure caused by a skull fracture resulting from the blows.

Evidence concerning the defendant's background and mental development was introduced to appeal to the leniency of the jurors. However, the law does not discriminate between degrees of intelligence in fixing the penalty for murder. *Foster* v. *State,* 37 Ariz. 281, 294 ■ P. 268.

The defendant relies for a reversal upon one error— that the trial court abused its discretion and erred in rejecting and failing to follow the recommendation of the jury contained in their verdict, by virtue of which the defendant would be imprisoned in the State Prison for life.

The statute applicable to this situation is Section 103-28-4, R. S. U. 1933, which reads as follows:

"Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court.  *  *  *"

It is well established that such a statute, in authorizing the jury to make a recommendation of leniency, merely opens the way for the possible · exercise of the court's discretion. In this jurisdiction the question as to whether the jury shall recommend the defendant to ■■ the mercy of the court is a matter entirely within its discretion, and may be exercised independently of the fact that the recommendation may not be warranted by the evidence. *State* v. *Thorne,* 39 Utah 208, 117 P. 58; *State* v. *Romeo,* 42 Utah 46, 128 P. 530. The penalty for murder in the first degree is fixed by statute at death, and the trial court can not vary from the imposition of this penalty except in cases in which the jury recommends a different one. Such recommendation does not remove the defendant from the operation of the statutory penalty but

merely opens the door for the exercise of discretion by the court, and thus permits the court, in the exercise of its sound discretion, to impose a penalty of imprisonment in the state prison for life instead of the death penalty which otherwise is mandatory.

Arbitrary exercise of discretionary powers is reviewable but there was nothing arbitrary or unfair in the present situation. The defendant received a fair, impartial trial, and a close reading of the record reveals that there were no errors or abuses, which might have proven prejudicial to the defendant. This court will not interfere with the trial court's exercise of discretion in the absence of an abuse of such discretion. *Brittain* v. *Gorman,* 42 Utah 586, 133 P. 370; *Naisbitt* v. *Herrick,* 76 Utah 575, 290 P. 950; *State* v. *Webb,* 18 Utah 441, 56 P. 159.

Judgment affirmed.

MOFFAT, C. J., and McDONOUGH and PRATT, JJ., concur.

WOLFE, Justice (concurring).

I concur but I am not sure that the prevailing opinion discusses the real question raised by appellant. He does not argue that the court does not have discretion to veto the recommendation of the jury when there is no basis for such recommendation, but that when there is a basis in the evidence for the jury's recommendation, it is an abuse of discretion for the court not to follow that recommendation. To illustrate: If in the evidence before the jury there was nothing on which the jury could reasonably have based a recommendation, then of course, the court need not follow the recommendation. But in the instant case there was evidence in the record, to wit: defendant's background and mental development which could well have been the reason for the jury's recommendation. Appellant says the court cannot disregard the recommendation when it has basis such as that.

I think the prevailing opinion gives the correct answer in this case because the discretion given to the court under Sec. 103-28-4, R. S. U. 1933, extends further than a choice of following the jury's recommendation only in case the evidence contains no basis for the recommendation. The discretion involves the right and duty to weigh that evidence and determine if in his mind it was sufficient to justify the recommendation, or put in another way, whether the evidence of background—mentality and circumstances —is such that he thinks the recommendation should be followed. It is conceivable that there may be cases where the evidence would be such that we could say that the court was arbitrary in determining that such evidence was insufficient to justify him in following the recommendation, but this it not one of these cases.

It should be stated that at a matter of policy courts should only with great hesitation refuse to follow the recommendation of juries for leniency, for the reason that juries will be far more reluctant to convict where conviction is deserved if they conclude that regardless of their recommendations the defendant will be executed.